UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TONI COLLINS o/b/o L.R.,

    Plaintiff,

v.                                             CASE No. 8:20-cv-1419-T-SPF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

## ORDER

    Plaintiff Toni Collins, as parental great aunt and legal guardian of L.R. ("Claimant"), seeks judicial review of the denial of her claim for child's Supplemental Security Income ("SSI"). In addition to the arguments the parties advance in their Joint Memorandum (Doc. 25), before the Court is Plaintiff's motion to remand under sentence six of 42 U.S.C. § 405(g) in light of medical evidence Plaintiff submitted to the Court for the first time (Doc. 26). The Commissioner opposes the motion (Doc. 30). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed the proper legal standards, and the new evidence Plaintiff submitted to the Court does not compel remand under sentence six, the Commissioner's decision is affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

### I.   Procedural Background

Plaintiff filed an application for SSI on Claimant's behalf on April 19, 2017 (Tr. 194-203).[2] The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 80-89, 91-102, 104-06, 110-15).  Plaintiff then requested an administrative hearing (Tr. 116-18).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff and Claimant appeared and testified (Tr. 41-79).  Following the hearing, the ALJ issued a decision finding Claimant not disabled and accordingly denied Plaintiff's claim for benefits (Tr. 20-34).  Subsequently, Plaintiff requested review from the Appeals Council ("AC"), which the AC denied (Tr. 1-6).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

### II.   Factual Background and the ALJ's Decision

Claimant, who was born in 2006, claimed disability beginning on August 25, 2010 (Tr. 20, 23)  Claimant was a school-aged child on the date the application was filed and at the time of the ALJ's decision (Tr. 23).  Plaintiff alleged Claimant is disabled due to a learning disability, developmental delays, emotional issues, and anger problems (Tr. 227).  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Claimant had not engaged in substantial activity since April 19, 2017, the application date (Tr. 23).  The ALJ then determined Plaintiff had the following severe impairments: asthma, a learning disability, and a neurodevelopmental disorder (*Id.*).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that

---

[2] All references to "Tr." refer to the transcript and page numbers of the Social Security administrative record filed on March 8, 2021 (Doc. 22).

2

met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 24). The ALJ further found that Claimant did not have an impairment or combination of impairments that functionally equaled a Listing (*Id.*). In making this determination, the ALJ concluded that Claimant had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself, and no limitation in the domains of moving about and manipulating objects and health and physical well-being (Tr. 27-33). Accordingly, the ALJ found Claimant not disabled (Tr. 34).

### III.   Legal Standard

An individual younger than the age of eighteen is considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and that can be expected to result in death or that has lasted, or can be expected to last, for at least twelve months.   42 U.S.C. § 1382c(a)(3)(C)(i).

Child disability claims are assessed under a three-step sequential analysis. 20 C.F.R. § 416.924(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of severe impairments; and (3) whether the claimant's impairment or combination of impairments "causes marked and severe functional limitations" for the child. 20 C.F.R. § 416.924(a). A child's impairment is recognized as causing marked and severe functional limitations if the impairments meets, medically equals, or functionally equals the severity of a Listing. 20 C.F.R. § 416.924(a), (d).

To "meet" a Listing, a child must suffer from the limitations specified in the Listings. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278-79 (11th Cir. 2004). To "medically equal" the limitations found in the Listings, the child's limitations must be "at least of equal medical significance to those of a listing impairment." *Id*. at 1279 (citing 20 C.F.R. § 416.926(a)(2)). Alternatively, if a child's impairment does not meet or medically equal a Listing, a child may be found disabled if the child's impairment "functionally equals" a Listing, which is determined by the extent to which the impairment limits the child's ability to function in the following six domains of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

A child's limitations "functionally equal" those in the Listings, and thus constitute a disability, if the child's limitations are "marked" in two of the six domains or are "extreme" in one. 20 C.F.R. § 416.926a(a). A child's limitation is "marked" when it is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "interferes seriously" with a child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is a limitation that is "more than marked" and "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

A determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.    Analysis**

In her portion of the Joint Memorandum (Doc. 25), Plaintiff challenges the ALJ's determination that Claimant's impairments do not functionally equal a Listing, contending the ALJ erred in finding Claimant has less than marked limitations in the domains of acquiring and using information and interacting and relating to others. In her motion to remand (Doc. 26), Plaintiff points to evidence obtained after Claimant's administrative

proceedings concluded. According to Plaintiff, this new evidence undermines the ALJ's findings. For the following reasons, the Court finds that Plaintiff's arguments lack merit.

### A. Sentence Six Remand

Plaintiff argues a sentence six remand is necessary for the Commissioner to reassess Claimant's application in light of a consultative evaluation performed by clinical psychologist Shelley Ochs, Psy.D. on November 7, 2020 (after the AC's denial became final), which Plaintiff submitted to the Court for the first time (Doc. 26, 26-1). According to the Commissioner, Plaintiff abandoned any argument for a sentence six remand because she did not advance this argument in the Joint Memorandum (Doc. 30).[3] The Commissioner also argues the November 2020 evaluation is cumulative and immaterial.

Sentence six of § 405(g) permits a district court to remand an application for benefits to the Commissioner for consideration of new evidence that previously was unavailable. 42 U.S.C. § 405(g). "[A] sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The "sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court" is when a plaintiff shows that the new evidence in non-cumulative, material, and that good cause exists for failing to submit the evidence at the administrative level. *Id.* at 1267; *see also Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001) (citations omitted) (to prevail on claim of remand under sentence six, claimant must show (1) new, non-

---

[3] The Court does not address this argument and instead denies Plaintiff's motion to remand on the merits.

cumulative evidence; (2) that is material, that is, relevant and probative so there is reasonable possibility it would change administrative results; and (3) there is good cause for failure to submit evidence at the administrative hearing); 42 U.S.C. § 405(g).[4]

The new evidence must relate to the period on or before the date of the ALJ's decision. *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *Enix v. Comm'r of Soc. Sec.*, 461 F. App'x 861 (11th Cir. 2012). Evidence that a condition the ALJ previously considered has deteriorated may entitle a claimant to benefits under a new application, but it is not probative of whether a person is disabled during the specific period under review. *Wilson*, 179 F.3d at 1279; *see also Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) (finding MRI report prepared four months after ALJ's decision not chronologically relevant or material as there was no indication report related back to the relevant time). In contrast, evidence of a condition that existed prior to the ALJ's hearing, but was not discovered until afterward, is new and non-cumulative. *See Vega*, 265 F.3d at 1218-19 (granting motion to remand based on evidence that after the ALJ's hearing a doctor discovered and surgically corrected a herniated disc).

Here, Plaintiff has not shown that Dr. Ochs's report meets the evidentiary standard for a sentence six remand. In May 2017 (one month after Plaintiff's application), licensed psychologist Lawrence Pasman, Ph.D. met with then-11-year-old Claimant for a consultative examination at the agency's request (Tr. 391-403). Dr. Pasman conducted a clinical interview, a mental status examination, and administered both the Wechsler Intelligence

---

[4] Here, Plaintiff meets the third requirement because Dr. Ochs's report did not exist until after the administrative proceedings concluded. *See Vega*, 265 F.3d at 1218-19.

Scale for Children Test and the Woodcock-Johnson Tests of Achievement. Plaintiff told Dr. Pasman she was concerned about Claimant's "learning problems . . . anger . . . depression . . . can't sit still." (Tr. 392) She worried Claimant suffered from Attention-Deficit Hyperactivity Disorder ("ADHD"), although he had not been diagnosed and had no previous mental health treatment (*Id.*).

Dr. Pasman observed Claimant's "incessant movement," reporting he "exhibits a heightened degree of restlessness and fidgeting behavior. . . . [he] remains in his seat, yet he continuously squirms." (Tr. 393). Testing revealed Claimant had a full-scale IQ in the very low range, low average processing speed, and very low working memory. His nonverbal, general ability, and cognitive proficiency index scores were in the very low range, and Claimant's ability to pay attention and concentrate on tasks was worse than most children his age (Tr. 394, 402). Dr. Pasman concluded:

> The testing is likely an underestimate of [Claimant's] true functioning due to probable [ADHD]. There is a degree of intratest scatter on several of the intellectual and achievement subtests; such a pattern of responding inconsistently to test stimuli is not uncommon among individuals with ADHD. He appears to struggle considerably in the area of reading, suggesting the likely presence of a Specific Learning Disorder. It is certainly conceivable that some of this child's reported "anger" and "depression" are due to academic frustrations. His prognosis appears to be guarded, although he has yet to receive any psychiatric or psychological intervention.

(Tr. 403).

The ALJ found Dr. Pasman's opinions persuasive (Tr. 27) and factored them into his analysis of whether Claimant's impairments functionally equal a Listing (discussed in more detail in the next section). Once the AC denied review of the ALJ's decision in April 2020, Plaintiff filed a new application on Claimant's behalf. At that point, the agency ordered a

second consultative psychological evaluation of Claimant, performed by Dr. Ochs in November 2020 (Doc. 26-1).[5] Plaintiff attaches Dr. Ochs's report to her motion to remand and contends it constitutes new, material evidence.

Dr. Ochs conducted a clinical interview and mental status examination of now-14-year-old Claimant and administered the same tests as Dr. Pasman. Again, Plaintiff expressed concern about Claimant's probable ADHD but relayed he was not on any psychotropic medication and had no mental health treatment history (*Id.* at 3). Like Dr. Pasman, Dr. Ochs observed that Plaintiff was "constantly moving," "not listening to the examiner," "fidgets with his hands and feet," "constantly taps his pencil," makes "careless errors," and "loses focus easily." (*Id.* at 4).

Comparing Dr. Pasman's and Dr. Ochs's results, Claimant's verbal comprehension, visual spatial, and fluid reasoning scores improved in the latter evaluation as did his full-scale IQ (although he still tested in the very low range) (*Id.* at 5-6). Claimant's processing speed score dropped from low average to extremely low, and his working memory score remained very low (*Id.*). Additionally, Dr. Ochs's results indicate Claimant's general ability index score increased from very low to average while his cognitive proficiency index score decreased from very low to extremely low (*Id.*). Dr. Ochs also noted deficits in Claimant's concentration, persistence, or pace (as did Dr. Pasman). Dr. Ochs concluded:

> There is strong support for the presence of [ADHD], Specific Learning Disorders, and Depressive Disorder. Consistent with his previous evaluation, [Claimant] exhibits major attention and learning problems which impair his functioning. In addition, he seems to be experiencing a form of depression. Current test results indicated average general intelligence and very limited

---

[5] As of the filing of Plaintiff's motion to remand, Claimant was awaiting an administrative hearing on the second application.

9

>reading, math, and writing skills, far below expected age and grade levels. Based on the findings of this assessment, [Claimant] requires intensive intervention and treatment to address multiple deficits across settings. Medical and therapeutic follow-up is recommended. Therefore, [Claimant's] prognosis is guarded.

(*Id*. at 13).

Plaintiff has not shown that Dr. Ochs's report is new and non-cumulative. Although Dr. Ochs authored her evaluation *after* the ALJ rendered his decision and *after* the AC denied Plaintiff's appeal, there is similar evidence in the record from Dr. Pasman. Plaintiff contends Dr. Ochs's report is "non-cumulative because it indicates a greater severity than earlier generated medical evidence, upon with the [ALJ] relied" (Doc. 26 at 4). But Plaintiff does not point to any specific test result, just that the "test results tend to explain why the claimant manifested marked to extreme difficulty with acquiring information, attending to and completing tasks, and interacting and related with others[.]" (*Id*. at 1). The two psychologists administered the same tests to Claimant and pinpointed similar intellectual weaknesses (with the variation explained above). If anything, Dr. Ochs's report suggests that between Dr. Pasman's evaluation in May 2017, and Dr. Ochs's report in November 2020, Claimant developed the depression symptoms Dr. Pasman warned about if Claimant did not get psychological intervention. In fact, Dr. Ochs adds a diagnosis that was not present when Dr. Pasman evaluated Claimant. Her report states: "Consistent with his previous evaluation, [Claimant] exhibits major attention and learning problems which impair his functioning. *In addition*, he seems to be experiencing a form of depression." (Doc. 26-1 at 13) (emphasis added); *see Wilson*, 179 F.3d at 1279 (evidence that a previously considered condition has deteriorated is not probative of whether claimant was disabled during the relevant period).

10

Neither has Plaintiff demonstrated that Dr. Ochs's evaluation is material. "To be material, the evidence must be relevant and probative so that there is a reasonable probability that it would change the administrative outcome." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (citation omitted).[6] Dr. Pasman's report was only part of the ALJ's overall determination that Claimant's impairments did not functionally equal a Listing. As discussed in the next section, the ALJ also relied on Claimant's testimony, his school records, treatment notes from pediatric well exams, and evidence from state agency consultants Michael Plasay, Ph.D., Lee Reback, Psy.D., and Gerald Sokol, M.D., who opined that Claimant had less than marked limitations in his ability to acquire and use information, attend and complete tasks, interact with others, and care for himself (Tr. 26). Plaintiff does not show how Dr. Ochs's report would change this analysis. Although Claimant tested worse in working memory and processing speeds and his cognitive proficiency index score decreased from Dr. Pasman's report to Dr. Ochs's, he tested higher in other areas, including a small increase in his full-scale IQ.[7] Plaintiff's motion to remand is denied.

---

[6] The Court is mindful that "[when] determining whether to remand a case to the [Commissioner] for consideration of new evidence, the mere statement by the [Commissioner] that the new evidence would not ultimately change the decision cannot be accorded any weight since the statement concerning the materiality of the evidence not in the certified administrative record is advisory at best." *Caulder*, 791 F.2d at 877 (citing *Cherry v. Heckler*, 760 F.2d 1186, 1194 (11th Cir. 1985)). The court must accept as valid the new evidence in deciding whether it is material. *Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1321-22 (11th Cir. 2015).

[7] In the Eleventh Circuit, "IQ tests create a rebuttable presumption of a fairly constant IQ throughout [a claimant's] life." *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001).

### B. Functional Equivalence / Acquiring and Using Information and Interacting and Relating to Others

In the Joint Memorandum, Plaintiff argues the ALJ erred in finding Claimant has less than marked limitations in acquiring and using information and interacting and relating to others.[8] After reviewing Claimant's and Plaintiff's testimony, Claimant's school and medical records, and the ALJ's decision, the undersigned finds that substantial evidence supports the ALJ's decision that Plaintiff's impairments do not functionally equal a Listing.

The domain of acquiring and using information refers to how well a child can acquire or learn information and how well a child uses the information he or she has learned. 20 C.F.R. § 416.926a(g); SSR 09-3p. This domain involves how well children perceive, think about, remember, and use information in all settings, which includes daily activities at home, at school, and in the community. *Id*. Examples of difficulty children could have in acquiring and using information are: (1) does not understand words about space, size, or time; (2) cannot rhyme words or the sounds in words; (3) has difficulty recalling important things learned in school the day before; (4) does not use language appropriate for his or her age; (5) is not developing readiness skills the same as peers (learning to count, reciting ABCs); (6) has difficulty comprehending written or oral directions; (7) struggles with following simple

---

[8] Plaintiff argues that, out of the six domains of life, Claimant has marked limitations in these two (Doc. 25 at 13). In her motion to remand, however, Plaintiff appears to add the domain of attending and completing tasks to this list (Doc. 26 at 1) but does not develop this argument. Additionally, in the Joint Memorandum, Plaintiff emphasizes "recent evidence generated after the opinions" relied on by the ALJ, which presumably is a reference to Dr. Ochs's evaluation (Doc. 25 at 13). As Dr. Ochs's evaluation was not in the administrative record and does not create a basis for remand, the Court does not consider it in its analysis of whether substantial evidence supports the ALJ's decision.

instructions; (8) has difficulty solving mathematics questions or computing arithmetic answers; or (9) talks only in short, simple sentences and has difficulty explaining what he or she means. 20 C.F.R. § 416.926a(g)(3).

The ALJ's finding that Claimant has less than marked limitations in the domain of acquiring and using information is supported by substantial evidence. During Dr. Pasman's evaluation, Claimant correctly added forward by 3s and spelled the word "world" backwards without difficulty (Tr. 393). He counted backwards from 20 to 1 and recited the alphabet "flawlessly." (*Id.*). Claimant completed a three-step command (Tr. 394). On a writing test Dr. Pasman administered, Claimant's sentences were "typical (simple, but adequate)." (Tr. 401). And "[o]n an applied math problems test, [Claimant] solved initial problems with no observed difficulty, but demonstrated increasing difficulties solving the latter items (typical)." (*Id.*).

Regarding Claimant's school performance, academic records show he had a 504 plan that allowed him more time on tests, but he was placed in regular learning classrooms. Plaintiff reported that Claimant repeated kindergarten (Tr. 232). In fourth grade (the 2016-2017 school year), Claimant was below level in reading, writing, and math, but he earned As, Bs, and Cs in science, social studies, art, music, and P.E. (Tr. 427) and was advanced to the fifth grade. During the 2018-2019 school year (sixth grade), Claimant had low grades across the board (including on standardized tests) and was retained for summer school but passed language arts, reading, world history, and his elective class of career research (Tr. 271-74). Claimant had excessive absences and tardies in math (his first period class) but did not attempt

tutoring or extra help offered at school (Tr. 50-51). Claimant testified he can read "easy words" like "important" and "description" (Tr. 49) and spends a lot of time on the internet.

At well child visits to Blossom Pediatric Care in March 2016, April 2017, May 2017, and October 2018, Plaintiff said she had no concerns about Claimant's development or learning (Tr. 291, 295, 474, 477), although this appears to be standard language on the pediatrician's treatment records. Nonetheless, Claimant's pediatrician referred him to mental health treatment in May 2016, but he did not obtain treatment and was not on any medications (Tr. 25, 26, 232). Plaintiff confirmed that "he's not being treated. I need help for that. I need help to get him treated for these things." (Tr. 61).

Additionally, at a neurological evaluation with pediatric neurologist Sergio Jacinto, M.D. in December 2017, Claimant showed adequate attention and concentration (Tr. 430-34). And non-examining state agency consultant Dr. Plasay opined in June 2017 at the initial administrative level, after reviewing Plaintiff's medical records and Dr. Pasman's evaluation, that Claimant had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating to others, and caring for himself (Tr. 84-86). At the reconsideration level, Drs. Reback and Sokol confirmed these findings (Tr. 96-98). On this record, the ALJ did not err in finding Claimant has less than marked limitations in acquiring and using information.

Turning to the domain of interacting and relating to others, this domain refers to how well a child can initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of others' possessions. 20 C.F.R. § 916.926a(i); SSR 09-5p.

Interacting and relating with others involves all aspects of social interaction at home, at school, and in the community. *Id*. Examples of difficulty that children could have in this domain are: (1) does not reach out to be picked up and held by caregiver; (2) has no close friends, or all friends are older or younger than the child; (3) avoids or withdraws from people he knows or is overly anxious or fearful of meeting new people or trying new experiences; (4) has difficulty playing games or sports with rules; (5) has difficulty communicating with others; or (6) has difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 916.926a(i).

On the one hand, school records from Adams Middle School during the 2018-2019 school year show Plaintiff was regularly disruptive in class and shockingly disrespectful to teachers, so much so that he was suspended multiple times, and Plaintiff transferred him to Stewart Middle School under threat of expulsion (Tr. 64-65, 499-509). Plaintiff's teachers at Adams reported he would leave the classroom during class, scream profanities, and throw his notebooks across the room (Tr. 499-509). In fact, Plaintiff testified that Claimant's school called her so often to pick him up after an outburst that she lost two jobs (Tr. 72).

On the other hand, Claimant admitted that "[a]t my old school I got in trouble[,]" but testified that at his new school "I can now leave the classroom to take a break – so I won't, like, punch somebody or something." (Tr. 57). Dr. Pasman observed in May 2017 that Claimant "exhibits no difficulty in establishing and maintaining emotional rapport. This child appears to be happy, and he responds favorably to positive reinforcement." (Tr. 394). He was "well-behaved and respectful throughout the evaluation." (Tr. 402). And Plaintiff completed a function report in April 2017 indicating Plaintiff's ability to communicate is not limited (Tr. 217). She reported Claimant gets along well with her but is disruptive in class

and struggles to keep friends due to anger issues (Tr. 220). But there is evidence he interacted socially with peers: In July of 2017, Plaintiff took Claimant to the ER after he injured his knee playing football with friends the day before (Tr. 417). In November 2018, at an appointment at Shriner's Hospitals for Children for hyperlipidemia, Claimant said he spent most of his time outside playing basketball with his friends (Tr. 454). Claimant testified that he likes P.E. because he talks to his friends and said he has a best friend of four years he sees outside of school as well (Tr. 47-48).

On this record, substantial evidence supports the ALJ's determination that Claimant had less than marked limitations in the domain of interacting and relating to others. The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

V. **Conclusion**

Accordingly, after consideration, it is hereby **ORDERED**:

1. Plaintiff's Motion to Remand (Doc. 26) is **DENIED**.
2. The decision of the Commissioner is affirmed.

16

2. The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on February 7, 2022.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE